IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| DENNIS EARL COX, ) | CIVIL ACTION NO. 9:13-2666-RBH-BM |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, ) | |
| ACTING COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

  The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of the final decision of the Commissioner wherein he was denied disability benefits.

This case was referred to the undersigned for a report and recommendation pursuant to Local Civil

Rule 73.02(B)(2)(a)(D.S.C.).

  Plaintiff applied for Disability Insurance Benefits ("DIB") on March 17, 2010

(protective filing date) alleging disability as of January 15, 2009, due to a back injury, blood clots in

his lungs, high cholesterol, and high blood pressure. (R.pp. 12, 173, 178). Plaintiff's claim was

denied both initially and upon reconsideration. Plaintiff then requested a hearing before an

Administrative Law Judge ("ALJ"), which was held on June 5, 2012. (R.pp. 30-48). The ALJ

thereafter denied Plaintiff's claims in a decision issued June 14, 2012. (R.pp. 12-24). The Appeals

Council denied Plaintiff's request for a review of the decision, thereby making the determination of

the ALJ the final decision of the Commissioner. (R.pp. 1-3).



Plaintiff then filed this action in this United States District Court, asserting that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further consideration, or for an outright award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)); see also, Hepp v. Astrue, 511 F.3d 798, 806 (8th cir. 2008)[Noting that the substantial evidence standard is even "less demanding than the preponderance of the evidence standard"].

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court



disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

### Discussion

A review of the record shows that Plaintiff, who was fifty-two (52) years old on the date he alleges he became disabled, has a high school education and has past relevant work experience as a delivery driver/furniture mover and porter (which included work as a dishwasher and food tray assembler/distributer). (R.pp. 22, 34-35, 173, 179, 180). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience, and functional capacity, and which has lasted or could reasonably be expected to last for a continuous period of not less than twelve (12) months. Additionally, Plaintiff's eligibility for DIB expired on March 31, 2011. (R.p. 14). Therefore, in order to obtain disability benefits, Plaintiff must show that his impairments became disabling on or before that date. See Johnson v. Barnhart, 434 F.3d 650, 655-656 (4th Cir. 2005) [In order to obtain DIB, a claimant must prove that they became disabled prior to the expiration of their insured status].

After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[1] of lumbar degenerative disc disease, right shoulder arthrosis status-post rotator cuff repair, and bilateral sensorineural hearing loss with tinnitus, through his last day insured he nevertheless retained the residual functional capacity ("RFC")

---

[1]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).



to perform light work[2] with the restrictions that he could not climb ladders, ropes, and scaffolds; could only occasionally climb ramps and stairs; stoop, kneel, crouch, and crawl; and reach overhead with his right dominant extremity; and was required to avoid concentrated exposure to temperature extremes, humidity, background noises, and hazards. (R.p. 17). Because Plaintiff was unable to perform any of his past relevant work with these limitations, the ALJ obtained testimony from a vocational expert at the hearing, and then concluded that Plaintiff could perform other jobs existing in significant numbers in the national economy with his limitations. Therefore, Plaintiff was not disabled during the period at issue, and was not entitled to disability benefits. (R.pp. 22-23).

Plaintiff asserts that in reaching her decision, the ALJ erred because her decision is not supported by substantial evidence, because the ALJ failed to address the question of medical equivalence (specifically as to Listing[3] 1.04 - disorders of the spine), because the ALJ failed to properly evaluate the combined effect of Plaintiff's multiple impairments, and because the ALJ's credibility analysis was legally and factually unsound. However, after a careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that there is substantial evidence to support the decision of the Commissioner, and that the decision should therefore be affirmed. Laws, 368 F.2d 640 [Substantial

---

[2]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

[3]In the Listings of Impairments, "[e]ach impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). A claimant is presumed to be disabled if his or her impairment meets or is medically equivalent to the criteria of an impairment set forth in the Listings. See 20 C.F.R. § 416.925.



evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

### Medical Records

Plaintiff's medical records reveal that he suffered a back injury in August 2004 (more than four years before his alleged onset of disability) when he fell at work. (R.pp. 248-249, 446). An MRI revealed degenerative changes throughout Plaintiff's spine with no areas of significant central stenosis, mild to moderate neural foraminal stenosis, and a right posterolateral disc bulge which effaced the right half of the dural sac and possibly displaced the right exiting L5 nerve root. (R.p. 446). Conservative treatment was recommended, Plaintiff receive physical therapy and lumbar epidural steroid injections, and Plaintiff was restricted to light duty with no lifting of greater than 20 pounds. (R.pp. 410, 421, 433, 446-449). Plaintiff was thereafter treated with Elavil (R.p. 351), which was later changed to Neurontin, as well as with a series of epidural steroid injections (R.pp. 351, 410, 421, 433, 448).

On February 13, 2006, a CT scan revealed that Plaintiff, who had been complaining of shortness of breath and short episodes of shooting chest pain, had bilateral pulmonary embolisms. (R.pp. 266-273). He was initially treated with Lovenox and then began extended treatment with Coumadin (a blood thinner generically known as Warfarin). (R.pp. 284-285). In March 2006, a lumbar MRI showed a broad-based disc protrusion at L4-5 that "likely" contacted the L5 nerve rootlet on the right, and a broad-based disc protrusion at L3-4. (R.pp. 241-242). It was noted that Plaintiff had 5/5 (full) strength in his quads bilaterally, negative straight leg raise, and normal distal sensation. A discogram was recommended, but Plaintiff was unable to undergo surgery at that time due to his recently initiated Coumadin therapy for his pulmonary embolism. (R.pp. 453-454). On May 8, 2006,

5



Plaintiff complained of back pain and occasional leg pain, although it was noted that he had essentially been on no pain medication. Examination revealed that the strength, sensation, and reflexes of Plaintiff's lower extremities were all within normal limits. (R.pp. 455-456).

In July 2008, Plaintiff was treated at the Veterans Medical Center for complaints of back pain which radiated across his low back. Plaintiff was noted to have an antalgic gait, decreased range of motion, and positive straight leg raise. (R.p. 647). He was prescribed muscle relaxers and rest and told not to bend or lift more than five pounds for a week. (R.p. 649). On July 31, 2008, spinal x-rays revealed an old mild partial compression fracture at T12 (very slight anterior wedging of the body of T12 likely related to very remote trauma) with no acute changes, minimal sclerosis interiorly and posteriorly on the body of L2 which was likely discogenic, disc spaces which appeared maintained, and no other noted abnormalities. (R.pp. 473-474, 644).

In August 2008, Plaintiff was seen at Doctors Care for complaints of lower back pain with radiation down both legs. Examination revealed tenderness across Plaintiff's lower lumbar area, positive straight leg raise, and decreased range of motion. A muscle relaxant and pain medication were prescribed. Plaintiff was told not to lift more than five pounds, not to drive, not to bend, to do only minimal walking, to do no overhead lifting, and to do no continuous standing/sitting. (R.pp. 458-459).

As noted, Plaintiff does not himself claim that any of his medical problems were of a disabling severity during the time period covered by the records cited hereinabove. Therefore, in order to obtain disability, Plaintiff would need to show a significant worsening of his condition after this time. Orrick v Sullivan, 966 F.2d 368, 370 (8th Cir. 1992) [absent showing of significant worsening of condition, ability to work with impairment detracts from finding of disability].



An MRI taken on January 31, 2009 (which was now after Plaintiff's alleged disability onset date of January 15, 2009) revealed only mild degenerative disc disease at L2-3, L3-4, and L4-5. There was no significant cervical spinal canal stenosis and only mild subarticular zone narrowing at L4-L5, although there was significant left greater than right foraminal stenosis at L3-4 and right greater than left foraminal stenosis at L4-5. (R.pp. 470-473). The ALJ noted these generally mild findings in her decision. (R.p. 18-19). In March 2009, Plaintiff complained of intermittent numbness and tingling in his left ring and little fingers at night and burning pain along his left wrist. EMG testing was consistent with median nerve neuropathy that was thought to be a residual from Plaintiff's previous carpal tunnel surgery. Plaintiff was fitted with a thumb splint, was instructed to continue wearing his wrist splint, was prescribed medication, and was referred for injections. (R.pp. 484-486, 491-493).

In July 2009 an x-ray of Plaintiff's right shoulder revealed mild acromioclavicular arthropathy, with minimal degenerative changes of the greater tuberosity. (R.p. 463). Bilateral foot x-rays showed bunions on both of Plaintiff's feet, degenerative changes of both first metatarsophalangeal ("MTP") joints, calcaneal spurs, and hammertoes on both feet, with no acute fractures or dislocations being seen. (R.pp. 466-468). Left ankle x-rays showed a plantar spur, with no fractures being noted, no soft tissue swelling or effusion seen, and with a normal ankle mortise. (R.p. 464).

Plaintiff was seen at the Veterans Medical Center in March 2010, during which he complained that he had experienced back pain for the previous month. On examination Plaintiff exhibited tenderness to palpation in his T12-L2 area and decreased range of motion due to pain, but otherwise his examination documented no abnormalities. There was no indication of any weakness



in his extremities, which were found to be without edema, muscle atrophy, cyanosis or clubbing.  X-rays revealed only a "mild" progression of Plaintiff's degenerative disc disease since July 2008.  There was facet arthropathy of Plaintiff's lower lumbar spine, but x-rays of Plaintiff's thoracic spine were unremarkable.  (R.pp. 461-462, 518-521).

Plaintiff then had a consultative orthopedic examination performed in August 2010 by Dr. Harriet Steinert.  Plaintiff told Dr. Steinert that he had pain down both legs radiating into his groin and down to his ankles, a burning and tingling feeling in his legs, and frequent buckling of his left ankle.  Plaintiff also estimated that he could only sit for 25 to 30 minutes, and walk for 40 minutes.  However, on examination Plaintiff's range of motion in his cervical spine, shoulders, elbows, wrists, knees, hips, and ankle were all normal.  Deep tendon reflexes were equal and normal in all of Plaintiff's extremities; there was no tenderness to palpation of his spine or paraspinal muscles; he had no muscle atrophy, sensory deficits, or motor deficits in any extremity; and his grip strength was normal and equal bilaterally.  Range of motion was also normal as to Plaintiff's lumbar spine, except that he could only flex at the waist to 20 degrees and had pain upon flexion and extension.  Straight leg raise was positive on the right at 40 degrees.  Although Plaintiff exhibited a limping gait, he was able to ambulate without an assistive device.  Plaintiff reported that surgery had resolved his bilateral carpal tunnel problems.  Dr. Steinert diagnosed Plaintiff with degenerative disc disease of his lumbar spine, hypertension , dyslipedemia,[4] and internal derangement of his left ankle.  (R.pp. 826-829).  The ALJ specifically discussed Dr. Steinert's findings in her decision, noting the

---

[4]Dyslipidemia is elevation of plasma cholesterol, triglycerides (TGs), or both, or a low high-density lipoprotein level that contributes to the development of atherosclerosis. http://www.merckmanuals.com/professional/endocrine_and_metabolic_disorders/lipid_disorders/ dyslipidemia.html, September 2013.



general absence of significant abnormal findings.  (R.pp. 15, 19).  Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessments of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]; Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual functional limitations].

    On August 23, 2010, state agency physician Dr. William Cain reviewed Plaintiff's medical records and opined that Plaintiff could perform light work with restrictions that he could only occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; could never climb ladders, ropes, and scaffolds; and should avoid all exposure to hazards (machinery, heights, etc.).  (R.pp. 830-836).  On February 11, 2011, state agency physician Dr. Jim Liao opined that Plaintiff could perform light work with limitations that Plaintiff should only occasionally climb ramps, climb stairs, stoop, kneel, and crawl; should never climb ladders, ropes, and scaffolds; was limited to occasional bilateral overhead reaching; should avoid concentrated exposure to extreme cold and heat, humidity, and noise; and should avoid all exposure to hazards.  (R.pp. 929-936).  See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [Opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner].  The ALJ gave considerable weight to these opinions, finding that they were generally consistent with the evidence of record, and specifically incorporated these findings into his RFC assessment.  (R.pp. 17, 22).  See Johnson v. Barnhart, 434 F.3d at 657 [ALJ can give great weight to opinion of medical expert who has thoroughly reviewed the record].

    In March 2011 (the last month Plaintiff was insured for DIB benefits), Plaintiff underwent a right shoulder Neer acromioplasty, right shoulder rotator cuff repair, and distal clavical



excision on the right.  Plaintiff's status post surgery was deemed to be "excellent", and he was discharged with an "excellent prognosis."  (R.pp. 938-940).

  As previously noted, Plaintiff's eligibility for DIB then expired on March 31, 2011. (R.p. 14).  Therefore, if his impairments were not disabling by this time, he is not eligible for disability benefits.  <u>Johnson</u>, 434 F.3d at 655-656 [In order to obtain DIB, a claimant must prove that they became disabled prior to the expiration of their insured status].  Based on the exhibits, evidence and opinions discussed, <u>supra</u>, substantial evidence supports the ALJ's conclusion that Plaintiff's impairments were not disabling by this time.  <u>Laws</u>, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"]; <u>Stephens v. Heckler</u>, 766 F.2d 284, 287 (7th Cir. 1985) [ALJ's discussion of evidence need only be sufficient to "assure [the court] that [he] considered the important evidence . . . [and to enable the court] to trace the path of [his] reasoning"]; <u>Thomas v. Celebreeze</u>, 331 F.2d 541, 543 [court scrutinizes the record as a whole to determine whether the conclusions reached are rational].

  In December 2011 (now more than eight months after his eligibility for DIB had expired), Plaintiff was treated at the Veterans Medical Center for complaints of lower back pain. Plaintiff noted that he had not worked since 2004, and stated he was there for follow up care because he wanted to get state disability benefits (he was already receiving benefits from the VA).  Plaintiff told the examiners that he was suffering pain on a level of 9 out of 10 in severity, with an estimation that his best pain day was a 6 out of 10.  However, Plaintiff was noted to have no pain or swelling in his joints, and on examination was found to be alert, oriented, and in no obvious distress.  His extremities were without edema, there was no muscle atrophy, his back had no visible deformity and no tenderness, his range of motion was intact, he had no gross focal deficit, his deep tendon reflexes



were symmetric and 2+, and he had no sensory motor deficit. Plaintiff was assessed with degenerative joint disease of the lumbar spine with radiculopathy, hypertension, obesity, hearing loss, lumbar spine stenosis with radiculopathy, hyperlipidemia, and pulmonary embolism. Plaintiff was given a TENS unit to help alleviate his pain. (R.pp. 1014-1018).

In January 2012, a lumbar MRI indicated multilevel degenerative changes worse at L3-4 affecting both the lateral recess and the neural foramen and at L4-5 affecting the neural foramen. The radiologist noted that "this mostly affects the left L4 nerve root." Plaintiff was noted to have normal height and alignment of his vertebral bodies, and normal clonus. Plaintiff's multilevel degeneration was considered to be "mild." (R.p. 948).

## I.

## (Listing Equivalence)[5]

While Plaintiff acknowledges in his brief that none of his impairments precisely meets the requirements of a Listing, he nevertheless argues that his impairment was medically equal to Listing 1.04, and that the ALJ erred in failing to address the issue of medical equivalence. As noted by the Commissioner, Plaintiff initially failed to articulate what part of Listing 1.04 he believed he equaled, although in his Reply Brief he identifies Listing 1.04A as being a Listing he might equal.

The Listing at § 1.04A requires a claimant to show:

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture),

---

[5]Plaintiff's first argument in his Brief is that the ALJ's decision is not supported by substantial evidence and that the ALJ's "failure to acknowledge any evidence prior to [Plaintiff's] onset poisoned each step of her decision." Plaintiff's Brief, ECF No. 15 at 8. Plaintiff has not made any specific argument in this section, instead referring to his later arguments concerning Listing equivalence and credibility. Because of this, Plaintiff's arguments as to substantial evidence are incorporated into the discussion of Plaintiff's other allegations of error discussed herein.



resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.04A.

Contrary to Plaintiff's arguments, the ALJ did consider whether Plaintiff's impairment or combination of impairments met or equaled Listing 1.04. (R.p. 17). The ALJ specifically stated that "[a]t step three, the undersigned must determine whether claimant's impairment **or combination** of impairments is of a severity to meet or **medically equal** the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526)."  (R.p. 13) (emphasis added).  She then found that Plaintiff "did not have an impairment or **combination** of impairments that met or **medically equaled** the severity of one of the listed impairments..."  (R.p. 16)(emphasis added).[6]

Plaintiff argues that the ALJ erred in failing to consider the lumbar MRI evidence from prior to his alleged onset date and from after his date last insured, which possibly showed contact with the L5 nerve root, and failed to consider images from 2012 which suggested degenerative changes affecting the left L4 nerve root.  However, even assuming for purposes of Plaintiff's argument that these MRIs could be deemed to relate to the time period at issue and definitively show compromise of the nerve root, Plaintiff still fails to show that he meets or equals Listing 1.04A, as he has not shown that he meets or equals the requirement of motor loss (atrophy with associated

---

[6]The ALJ also specifically considered whether Plaintiff met or equaled Listing 1.02 (Major dysfunction of a joint(s)). (R.p. 17).



muscle weakness or muscle weakness) accompanied by sensory or reflex loss. See Sullivan, 493 U.S. at 530 ["For a claimant to show that his impairment matches a Listing, he must show that it meets *all* of the specified criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."]. As noted by the ALJ in her decision, in August 2010, Dr. Steinart specifically found that Plaintiff's deep tendon reflexes were equal and normal in all extremities, that he had no sensory or motor deficits in any extremity, and had no muscle atrophy. (R.pp. 15, 828-829). Further, at an examination in December 2011, Plaintiff was noted to have no swelling in his joints, no muscle atrophy, intact range of motion, and no sensory motor deficit. (R.pp. 1014-1018).

Although Plaintiff admits he has not presented evidence of all of the requirements of Listing 1.04A because he has not demonstrated motor loss accompanied by sensory or reflex loss, Plaintiff appears to argue that he "equals" the requirements of Listing 1.04A based on evidence from a combination of all of his impairments, to include a positive EMG study objectively confirming median nerve neuropathy in his left arm; bilateral foot x-rays showing bunions, calcaneal spurs, hammertoes, and degenerative changes in his toes; and treatment for a rotator cuff tear and arthrosis in his left shoulder. If a claimant has an impairment described in the Listing, but does not exhibit one or more of the findings specified in that listing (or exhibits all of the findings, but one or more of the findings is not as severe as specified), the claimant's impairment can still be found to be "medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria." 20 CFR § 404.1526(b)(1). Plaintiff contends that these other findings are "of equal medical significance" to the portions of Listing 1.04 that he does not meet. However, Plaintiff has not shown that the evidence concerning his left arm neuropathy,

13



foot problems, and/or shoulder impairment are at least of equal medical significance to the required Listing 1.04 criteria.

Plaintiff is apparently attempting to argue that his positive EMG study objectively confirming median nerve neuropathy in his left arm equaled the requirement for sensory loss. However, this study, which was from March 2009 and which the ALJ discussed in her decision, revealed only mild median neuropathy in Plaintiff's left wrist, and suggested that his symptoms might be residual from his carpal tunnel surgery (not from Plaintiff's lower back impairment). (R.pp. 14-15, 491). Notably, Plaintiff subsequently reported in August 2010 that his surgery had resolved his carpal tunnel problems. (R.p. 828). The ALJ also noted that Plaintiff's treatment records failed to document ongoing prescriptions for medication, surgery, or any other extensive treatment for Plaintiff's wrist impairment. (R.p. 15). As for his foot, although the ALJ did not specifically note Plaintiff's foot x-rays, she referenced the x-rays of Plaintiff's ankle and noted that Plaintiff made few complaints of problems with his left ankle to treating providers during the time period at issue. (R.p. 15). Additionally, Dr. Cain specifically noted that he had reviewed the x-rays of Plaintiff's feet from July 2009 in reaching his conclusions as to Plaintiff's RFC, and the ALJ considered and accorded considerable weight to the opinions of the state agency medical consultants in her decision. (R.p. 22). Finally, the ALJ also specifically considered Plaintiff's rotator cuff tear and shoulder arthrosis (R.pp. 14, 17, 20, 21) and found that Plaintiff's rotator cuff repair was a severe impairment (R.pp. 13-14).

In sum, the ALJ found that Plaintiff's impairments did not meet or equal the severity of one of the listed impairments; (R.pp. 16-17); and the undersigned can discern no reversible error in this finding. Lyall v. Chater, No. 94-2395, 1995 WL 417654 at * 1 (4th Cir. 1995)[Finding no error where the ALJ's analysis "was sufficiently comprehensive as to permit appellate review"];



<u>Blalock</u>, 483 F.2d at 775 [it is the claimant who bears the burden of proving her disability]; <u>see also</u> <u>Hays</u>, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; <u>Clarke v. Bowen</u>, 843 F.2d 271, 272-273 (8th Cir. 1988)["The substantial evidence standard presupposes . . . a zone of choice within which the decision makers can go either way without interference by the Courts"].  Hence, no error is presented in the ALJ's consideration of Plaintiff's impairments in conjunction with the Listings.  <u>Thomas</u>, 331 F.2d at 543 [court scrutinizes the record as a whole to determine whether the conclusions reached are rational]; <u>Trenary v. Bowen</u>, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual functional limitations]; <u>Bowen v. Yuckert</u>, 482 U.S. at 146, n. 5 [Plaintiff has the burden to show that she has a disabling impairment]; <u>cf</u>. <u>Shelton ex rel. Brownless v.</u> <u>Barnhart</u>, 24 F. App'x  623, at ** 2 (8th Cir. 2001)[Upholding ALJ's finding that Plaintiff was not functionally equal to a listed disability].

## II

### (Combination of Impairments)

Plaintiff also alleges that the ALJ failed to evaluate the combined effect of his severe and nonsevere impairments.  <u>See</u> <u>Walker v. Bowen</u>, 889 F.2d 47 (4th Cir. 1989)[Holding that disability may result from a number of impairments which, taken separately, might not be disabling, but whose combined effect, taken together is sufficient to render a claimant unable to engage in substantial activity].  Plaintiff contends that "the symptoms from his many impairments left him with only the capacity for sedentary work..." ECF No. 15 at 13.  This argument is without merit.

In her decision, the ALJ specifically acknowledged that she had to determine whether Plaintiff had a medically determinable impairment that was severe as well as whether he had

15



impairments that were severe in combination. (R.pp. 13, 16). <u>Flaherty v. Astrue</u>, 515 F.3d 1067, 1071 (10th Cir. 2007)[ALJ should be taken at this word when he states that he considered all of the claimant's impairments in combination]. The ALJ also confirmed that she carefully considered "all of the evidence" and the "entire record." (R.pp. 12, 14, 17). See <u>Wall v. Astrue</u>, 561 F.3d 1048, 1070 (10th Cir. 2009)[Noting well established principle of taking ALJ at his word when he indicates he considered all of the evidence]. The ALJ also specifically discussed the evidence concerning Plaintiff's severe and nonsevere impairments at step one, considered whether his impairments or combination of impairments met or equaled a Listing at step three, noted that in making the RFC findings she had considered all of Plaintiff's symptoms (R.p. 17), and discussed both Plaintiff's severe and non-severe impairments at step four (R.pp. 17-22). See <u>Miller v. Astrue</u>, No. 08-62, 2009 WL 2762350, at **13-14 (E.D.Mo. Aug. 28, 2009)["Where an ALJ separately discusses the claimant's impairments and complaints of pain, as well as her level of activity, it cannot be reasonably said that the ALJ failed to consider the claimant's impairments in combination"].

No reversible error is shown in the ALJ's analysis of Plaintiff's impairments in her decision. <u>Martise v. Astrue</u>, No 08-1380, 2010 WL 889826, at *23 (E.D. Mo. Mar. 8, 2010)[Finding that ALJ sufficiently considered Plaintiff's impairments in combination by summarizing Plaintiff's medical records and separately discussing each of Plaintiff's alleged impairments] (citing <u>Hajek v. Shalala</u>, 30 F.3d 89, 92 (8th Cir. 1994)[conclusory statement that ALJ did not consider combined effects of impairments was unfounded where ALJ noted each impairment and found that impairments, alone or combined, were not of listing-level severity]; <u>see also</u> <u>Browning v. Sullivan</u>, 958 F.2d 817, 821 (8th Cir. 1992)[Finding that separate discussion of all of a plaintiff's impairments with the conclusion that these impairments did not prevent the plaintiff from performing her past



relevant work was sufficient to establish that the ALJ did not consider Plaintiff's impairments were disabling in combination, and that to "require a more elaborate articulation of the ALJ's thought processes would not be reasonable"]; Waxvik v. Apfel, No. 99-152, 2001 WL 1820373, at *4 (D.N.D. Mar. 12, 2001); Isaacs v. Shalala, No. 92-4101, 1994 WL 247276, at *5 (N.D. Iowa Mar. 11, 1994) Wilfong v. Shalala, No. 93-472, 1994 WL 780186, at *4 (D.Minn. Oct. 18, 1994); see also Williams v. Colvin, No. 11-2344, 2013 WL 877128, at *3 (D.S.C. Mar. 8, 2013); Simmons v. Astrue, No. 11-2729, 2013 WL 530471, at *5, n. 7 (D.S.C. Feb. 11, 2013)["When considering whether the ALJ properly considered the combined effects of impairments, the decision must be read as a whole"]; Glockner v. Astrue, No. 11-955, 2012 WL 4092618, at *4 (D.S.C. Sept. 17, 2012).

Further, even if the ALJ had erred by not discussing all of Plaintiff's impairments in combination (which the undersigned does not find), any such error would have been harmless in this case. See Fischer–Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005); see also Davis v. Astrue, No. 07–231, 2008 WL 540899, at *3 (D.S.C. Feb. 22, 2008) [recognizing harmless error analysis]. A remand is not required under a harmless error analysis "for a more thorough discussion of the listings when confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review." Fischer–Ross, 431 F.3d at 734; see also Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir.1994)[finding the ALJ's error harmless when the ALJ would have reached the same result notwithstanding an error in his analysis]; Ngarurih v. Ashcroft, 371 F.3d 182, 190 n. 8 (4th Cir. 2004) ["reversal is not required when the alleged error clearly had no bearing on the . . . substance of the decision reached."]; Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996)["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"]. Therefore, this claim is without merit.



### III

### (RFC Determination)

Substantial evidence also supports the ALJ's determination that Plaintiff had the RFC to perform a range of light work.  First, there is no indication that any of Plaintiff's treating or examining physicians opined that he had any permanent restrictions which would prevent him from performing the range of light work as found by the ALJ.  See Lee v. Sullivan, 945 F.2d 687, 693 (4th Cir. 1991)[Finding that where no physician opined that Plaintiff was totally and permanently disabled supported a finding of no disability ]; Goodwater v. Barnhart, 579 F.Supp.2d 746, 757 (D.S.C. 2007)[Noting no physician ever opined that Plaintiff was disabled].  The ALJ also gave considerable weight to the opinions of the state agency consultants (Drs. Cain and Liao), as they were generally consistent with the evidence of record (R.p. 22).  See 20 C.F.R. §§ 404.1527(e) and 416.927(e); SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996) ["Findings of fact made by State agency ... [physicians]... regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review."]; Smith, 795 F.2d at 345 [opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner].  Indeed, the ALJ's RFC finding is nearly identical to the RFCs found by the state agency consultants.

Although the ALJ's determination as to Plaintiff's ability to reach did not match exactly the findings of the state agency physicians (Dr. Cain found that Plaintiff had no limitations, Dr. Liao opined that Plaintiff could do only occasional bilateral reaching,  and the ALJ restricted Plaintiff to only occasional overhead reaching with his right dominant extremity), there is no error in an ALJ assigning different or even more restrictive limitations than were opined to by a state



agency physician.  See Marquez v. Astrue, No. 08-206, 2009 WL 3063106, at *4 (C.D.Cal. Sept. 21, 2006)[No error where ALJ's RFC finding was even more restrictive than the exertional levels suggested by the State Agency examiner]. Here, the ALJ's determination is supported by substantial evidence, with the ALJ noting that a July 2009 x-ray revealed only mild arthropathy and only minimal degenerative changes (R.pp. 19, 463), that Dr. Steinert observed in August 2010 that Plaintiff had a normal range of motion in his right shoulder (R.pp. 20, 826), that Plaintiff was discharged after shoulder surgery with an "excellent" prognosis and there was no indication he needed much treatment or experienced any significant problems with his right shoulder following surgery (R.pp. 20, 938), and that Plaintiff testified he could use his right shoulder to lift his arm to about the level of his nose (R.pp. 20, 21, 37).

The ALJ also noted that although Plaintiff had high blood pressure and high cholesterol, he did not experience any complications during the relevant time period and that his prescribed medications were generally effective.  (R.p. 16).  The ALJ further found that the overall evidence failed to reveal either any treatment or any significant limitations with respect to Plaintiff's alcohol abuse (R.p. 16), while the ALJ included a restriction in the RFC to avoid concentrated exposure to background noises based on the results of a July 2009 audiological test, as well as a restriction to avoid concentrated exposure to temperature extremes and humidity since these conditions are commonly known to exacerbate arthritic pain. (R.p. 22).  Additionally, the ALJ found that Plaintiff was required to avoid exposure to hazards in order to accommodate safety issues related to Plaintiff's lumbar spine and right shoulder impairments. (R.p. 21).

Additionally, to the extent that Plaintiff's complaint is that the ALJ did not in determining his RFC discuss *every* medical record submitted, this is not a requirement.  Dryer v.



19

<u>Barnhart</u>, 395 F.3d 1206, 1211 (11th Cir. 2005) [ALJ not required to specifically refer to every piece of evidence in the decision]. Rather, what is required is that the ALJ review the medical records and set forth a rationale for his decision that is supported by substantial evidence in the case record. <u>Carlson v. Shalala</u>, 999 F.2d 180, 181 (7th Cir. 1993) ["What we require is that the ALJ sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.'"]; <u>Stephens</u>, 766 F.2d at 287 [ALJ's discussion of evidence need only be sufficient to "assure [the court] that [he] considered the important evidence . . . [and to enable the court] to trace the path of [his] reasoning"]. An ALJ is not required to provide a written evaluation of every piece of evidence, but need only "minimally articulate" his reasoning so as to "make a bridge" between the evidence and his conclusions. <u>Fischer v. Barnhart</u>, 129 F. App'x. 297, 303 (7th Cir. 2005) (citing <u>Rice v. Barnhart</u>, 384 F.3d 363, 371 (7th Cir. 2004)); <u>Craig v. Apfel</u>, 212 F.3d 433, 436 (8th Cir. 2000) ["ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered"] (citations omitted). The ALJ's decision certainly meets this standard in this case.

Therefore, this claim is without merit.

### III.

### (Credibility Determination)

Finally, Plaintiff alleges that the ALJ's credibility analysis was legally and factually unsound because she emphasized mild findings and unrelated negative findings which are "undermined by a plain reading of the *entire* record." ECF No. 15 at 14. Plaintiff asserts that he was first injured in 2004 and continued to complain of pain thereafter, and that the ALJ's finding that he



had not required much treatment is erroneous because he has "been treated with every mode save for surgery, and it was his other conditions that prevented surgery." ECF No. 15 at 15.

Where a claimant seeks to rely primarily on subjective evidence to prove pain, the ALJ "must make a finding on the credibility of the individual's statements, based on a consideration of the entire case record;" See SSR 96-7p, 61 Fed. Reg. 34,483, 34,485 (July 2, 1996); Mickles, 29 F.3d at 925-926 [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]; and when objective evidence conflicts with a claimant's subjective statements, an ALJ is allowed to give the statements less weight. See Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1996)["Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment."]; see also SSR 96-7p, 1996 WL 374186, at *1 (1996). Here, the ALJ concluded that Plaintiff's impairments could reasonably be expected to cause his alleged symptoms, but found that they were not credible to the extent they precluded him from performing the range of light work set forth in the decision. (R.p. 18). There is no reversible error in this finding, as it is supported by substantial evidence in the case record.

Contrary to Plaintiff's assertion, the ALJ did not discount Plaintiff's allegations solely on a lack of objective medical evidence, but considered Plaintiff's statements about his symptoms, his treatment history, his medications and their side effects, and the opinion evidence in making the credibility determination. (R.pp. 17-22). Although Plaintiff's allegations concerning his pain varied and the ALJ noted that Plaintiff reported an increase in back pain in March 2010 and again in August



and September 2010 (after a motor vehicle accident), the ALJ also noted that in January 2009, Plaintiff reported that his back pain was only 3 out of 10 (R.pp. 18, 507, 622), and that by September 2009 and October 2009, Plaintiff reported his pain was 0 out of 10. (R.pp. 547, 549, 726).

The ALJ also found that Plaintiff had not required much treatment for his back pain during the time period at issue, noting that Plaintiff's medical providers had primarily treated him with pain medication and muscle relaxers including Salsate, Tramadol, Cyclobenzaprine, and Flexeril, together with some chiropractic care in September 2010. (R.p. 19). See Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992)[generally conservative treatment not consistent with allegations of disability].

Plaintiff argues that he tried every treatment mode short of surgery and was not able to do that due to his other conditions, but as noted by the ALJ, Plaintiff was not prescribed a TENS unit until nearly nine months after his date last insured, and he required little, if any, physical therapy or steroid injections (conservative treatments) during the time period at issue. (R.p. 19). While Plaintiff further contends that the ALJ's treatment of Dr. Steinert's exam was "disingenuous"; Plaintiff's Reply Brief, ECF No. 17 at 5; a review of the ALJ's decision reveals that she did note Dr. Steinert's finding that Plaintiff could flex at the waist to only 20 degrees, had positive straight leg raise on the right, was not able to walk on his heels, and had a limping gait, all findings Plaintiff cites as supporting his claim for disability. (R.p. 19). However, the ALJ properly also noted that there were few additional significant abnormal findings in Dr. Steinert's examination, including that Plaintiff was able to extend and laterally flex fully, had no tenderness to palpation of his paraspinal muscles, could walk on his toes, could tandem walk, and could squat down (id.), all of which relate to Plaintiff's allegedly disabling impairments. Further, the ALJ noted that examinations by other



22

providers regarding Plaintiff's back pain were essentially benign, including that a September 2010 examination that revealed only some reduced range of motion and mild tenderness following a motor vehicle accident, as well as notations from September 2010 and March 2011 that Plaintiff ambulated with a steady gait.  (R.pp. 19, 906, 913, 1125).

   The ALJ also discounted Plaintiff's credibility based on inconsistencies between Plaintiff's testimony and the record.  In particular, the ALJ noted that despite Plaintiff's allegations of disabling back pain, treatment notes did not document subjective complaints of the degree and frequency of someone suffering from such significant symptoms. (R.p. 18).  The ALJ also wrote that although Plaintiff testified that his medications made him sleepy, he made few if any complaints about the side effects of his medications to his physicians.  (R.p. 22).  See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; see also Craig v. Chater, 76 F.3d at 595 ["Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment."]; Ables v. Astrue, No. 10-3203, 2012 WL 967355, at *11 (D.S.C. Mar. 21, 2012) ["Factors in evaluating the claimant's statements include consistency in the claimant's statements, medical evidence, medical treatment history, and the adjudicator's observations of the claimant.", citing to SSR 96-7p.]; Guthrie, 2011 WL 7583572, at *8 ["[I]t is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, or testimony, and other evidence"].



In sum, based on the record and evidence discussed hereinabove, <u>supra</u>, the undersigned does not find that the ALJ conducted an improper credibility analysis in reaching her conclusions, or that the decision otherwise reflects a failure to properly consider the record and evidence in this case. <u>Bowen</u>, 482 U.S. at 146, n. 5 [Plaintiff has the burden to show that he has a disabling impairment]; <u>Jolley v. Weinberger</u>, 537 F. 2d 1179,1181 (4th Cir. 1976) [finding that the objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]; <u>Laws</u>, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"]; <u>Hays</u>, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; <u>Anderson v. Barnhart</u>, 344 F.3d 809, 815 (8th Cir. 2003) [Evidence that a claimant is exaggerating symptoms can be considered as part of the evaluation of Plaintiff's subjective complaints]. This argument is without merit.

### Conclusion

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." <u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. <u>Blalock</u>, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act



during the relevant time period. Therefore, it is recommended that the decision of the Commissioner

be **affirmed**.

The parties are referred to the notice page attached hereto.



_____
Bristow Marchant
United States Magistrate Judge

December 8, 2014
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

